**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**RICHARD A. LOVERN,**

       **Petitioner,**

**vs.**                                     **Case No. 4:04cv463-RH/WCS**

**JAMES McDONOUGH,[1]**

       **Respondent.**

_____/

**REPORT AND RECOMMENDATION ON § 2254 PETITION**

Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. Petitioner challenges his 2002 conviction and sentence for multiple counts of possession of child pornography, imposed by the Second Judicial Circuit, Leon County. *Id.*, p. 1. Respondent filed a motion to dismiss the petition as untimely, which was denied. Docs. 10, 12, and 16. Respondent then filed an answer. Doc. 15. The answer

---

[1] James McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent. Fed.R.Civ.P. 25(d).

references the exhibits originally supplied in an appendix to the motion to dismiss (doc.

5), and hereafter references to exhibits are to those supplied in the appendix unless

otherwise noted.  *See* Doc. 5, p. 5 (index to appendix).  Petitioner filed a reply to the

answer.  Doc. 21.

**State court procedural history**

On April 1, 2002, Petitioner entered no contest pleas in case numbers 2001-1557

and 2001-2841 in the Second Judicial Circuit in Leon County.  Ex. A.  Two counts were

charged in case number 2001-1557, based on two photographs seized from Petitioner's

closet on April 2, 2001.  Ex. A, pp. 3, 7-8.  The prosecutor said that according to Dr.

Moorer, a pediatrician and an expert used in child pornography cases, the two

photographs charged in that case "contained sex acts being performed on children that

were less than 12 years of age."  *Id.*, pp. 7-8.

Petitioner was charged with 186 counts in case number 2001-2841.  *Id.*, p. 3.

The prosecutor said that the counts were based on Dr. Moorer's review of 283 digital

images seized from Petitioner, and his finding "that at least 186 of them were confirmed

to be children under the age of 17, most of them children under the age of 12.  And the

images included children both posing in a lewd manner and also images that depicted

actual and simulated intercourse between adults and children."  *Id.*, p. 8.

Each count carried a maximum sentence of five years, and Petitioner understood

that he faced a possible maximum penalty of the total number of counts (188) times five

years, or 940 years.  *Id.*, pp. 8-9.  There was no real plea agreement because it was an

"open plea" with sentencing left to the discretion of the court.  *Id.*, p. 10.

Sentencing began on August 8 and continued on August 9, 2002.  Ex. B.

Petitioner was sentenced to 80 months in case number 2001-1557, at the bottom of the

state sentencing guidelines range.  Ex. B, pp. 82-84.[2]  The court withheld adjudication

and imposed five years probation in case number 2001-2841.  *Id.*

Petitioner filed a FLA. R. CRIM. P. 3.850 motion, which was denied following an

evidentiary hearing.  Exs. C (motion) and D (transcript).[3]  Denial of relief was affirmed

on appeal per curiam.  Exs. E-G (briefs) and H (order).

**Section 2254 Standard of Review**

"Federal habeas relief is available to state prisoners only after they have

exhausted their claims in state court.  28 U.S.C. §§ 2254(b)(1), (c)." O'Sullivan v.

Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999).  In order to

properly exhaust state remedies,[4] "state prisoners must give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the

State's established appellate review process."  526 U.S. at 845, 119 S.Ct. at 1732.

"Boerckel applies to the state collateral review process as well as the direct appeal

---

[2] Since Ex. B includes two transcripts (both starting at p. 1), references to page numbers for Ex. B are to the appellate record page numbers, appearing on the bottom right corner of each page.

[3] The state court made its findings and denied Rule 3.850 relief on the record, at the end of the hearing.  Ex. D, pp. 68-77.  The court indicated that a written order would follow which "will simply state, for the reasons as stated on the record, the motion is denied."  *Id.*, p. 76.  A separate written order is not in this court's file.

[4] Claims which have been fairly presented to the state courts are referred to as *properly* exhausted, to distinguish them from claims which are considered exhausted because procedurally barred.  *See* O'Sullivan, 526 U.S. at 848, 119 S.Ct. at 1734 (citing the dissenting opinion of Justice Stevens, *Id.*, at 854, 119 S.Ct. at 1737).

process."  Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004); Pruitt v. Jones, 348 F.3d 1355, 1359 (11th Cir. 2003).

Where a claim was not fairly presented in state court and is procedurally barred from further state court review, a petitioner must demonstrate cause for the default and actual prejudice, or demonstrate that the constitutional violation has probably resulted in conviction of an innocent person.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991).

Even for claims which have been exhausted and not procedurally barred, review is limited.  As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), § 2254 relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim" either :

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (quoting § 2254(d)).  "This statute also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence.  This presumption of correctness applies equally to factual determinations made by state trial and appellate courts."  321 F.3d at 1312 (citations and footnote omitted).

As to legal findings, the "contrary to" and "unreasonable application" clauses of §
2254(d)(1) have independent meanings.  Williams v. Taylor, 529 U.S. 362, 404-406,
120 S.Ct. 1495, 1519-1520, 146  L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694,
122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams).  "[C]learly established
Federal law, as determined by the Supreme Court of the United States," refers only to
holdings of the Supreme Court, but decisions of lower federal courts may be considered
to the extent that they demonstrate how those courts applied Supreme Court
precedent.  Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations
omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if
> the state court arrives at a conclusion opposite to that reached by [the
> Supreme] Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable facts.
> Under the "unreasonable application" clause, a federal habeas court may
> grant the writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.

The law governing ineffective assistance of counsel claims was clearly
established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066,
2068, 80 L.Ed.2d 674 (1984).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520;
Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland, "[a]
convicted defendant making a claim of ineffective assistance of counsel must identify
the acts or omissions of counsel that are alleged not to have been the result of
reasonable professional judgment," and must also "affirmatively prove prejudice."  466
U.S. at 693-694, 104 S.Ct. at 2066-68.  The court need not approach the Strickland

inquiry in any particular order, or address both prongs if an insufficient showing is made

on one.  466 U.S. at 697, 104 S.Ct. at 2069.

Since Petitioner asserts ineffectiveness in the context of his plea, the prejudice

part of Strickland:

> focuses on whether counsel's constitutionally ineffective performance
> affected the outcome of the plea process.  In other words, in order to
> satisfy the "prejudice" requirement, the defendant must show that there is
> a reasonable probability that, but for counsel's errors, he would not have
> pleaded guilty and would have insisted on going to trial.

Hill v. Lockhart, 467 U.S. 52, 58-59, 106 S.Ct 366, 370, 88 L.Ed.2d 203 (1985).  This

"resembles" the Strickland prejudice inquiry where there is a trial:

> For example, where the alleged error of counsel is a failure to investigate
> or discover potentially exculpatory evidence, the determination whether
> the error "prejudiced" the defendant by causing him to plead guilty rather
> than go to trial will depend on the likelihood that discovery of the evidence
> would have led counsel to change his recommendation as to the plea.
> This assessment, in turn, will depend in large part on a prediction whether
> the evidence likely would have changed the outcome of a trial.  Similarly,
> where the alleged error of counsel is a failure to advise the defendant of a
> potential affirmative defense to the crime charged, the resolution of the
> "prejudice" inquiry will depend largely on whether the affirmative defense
> likely would have succeeded at trial.

467 U.S. at 59, 106 S.Ct at 370-371 (citation omitted).[5]

> [C]ounsel owes a lesser duty to a client who pleads guilty than to one who
> decides to go to trial, and in the former case counsel need only provide his
> client with an understanding of the law in relation to the facts, so that the
> accused may make an informed and conscious choice between accepting
> the prosecutions's offer and going to trial.  To impart such an
> understanding to the accused, counsel must, after making an independent
> examination of the facts, circumstances, pleadings and laws involved,

---

[5] Petitioner asserts that his ineffectiveness claim is governed by Brazeail v. State,
821 So.2d 364 (Fla. 1st DCA 2002).  Doc. 1, p. 4(VI).  To the extent (if any) that that
case articulated a different standard than Strickland or Hill, it is not binding on this court.

offer his informed opinion as to the best course to be followed in protecting the interests of his client.

Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (citations omitted); *see also* Stano, 921 F.2d at 1151, and Agan v. Singletary, 12 F.3d 1012, 1017 1018 (11th Cir. 1994) (both quoting this language in part).

In a challenge to a guilty plea:

[T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  *Solemn declarations in open court carry a strong presumption of verity.*  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (emphasis added, citations omitted).

To establish prejudice due to ineffectiveness of counsel at sentencing, Petitioner must show a reasonable probability that, absent the errors, the court would have sentenced him differently.  466 U.S. at 695, 104 S.Ct. at 2069.

If the state court identifies and applies the framework of Strickland in assessing an ineffective assistance claim, its adjudication does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently. Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852. To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . .  Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an

objectively unreasonable manner."  <u>Bell</u>, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing*

<u>Williams</u>).   "[T]he most important point is that an *unreasonable* application of federal law

is different from an *incorrect* application of federal law."  <u>Williams v. Taylor</u>, 529 U.S. at

410, 120 S.Ct. at 1522.

**Grounds and Legal Analysis**

Petitioner identifies two grounds for relief in the § 2254 petition form.  There are

several claims within each ground, and further clarification of the issues is provided in

Petitioner's reply.

Petitioner asserts that his counsel was ineffective for advising that there was no

defense to the charges, which he asserts was erroneous as there were viable defenses

available.  Doc. 1, pp. 4, 4(I).  The defenses counsel allegedly should have pursued

were that others had access to Petitioner's computer, "the defense of nudity versus

child pornography," the possibility that the images could have been computer generated

or virtual images, and exculpatory witnesses.  *Id.*, pp. 4(I) -4(II).  Counsel's advice that

there were no defenses, that the sentence would not exceed 60 months (addressed

ahead), and his censuring Petitioner from presenting mitigating evidence at sentencing,

Petitioner argues, caused him to enter a plea he would not have otherwise entered.  *Id.*,

p. 4(IV).

**Virtual images**

In addressing Petitioner's ineffectiveness claim, the state court noted that the

possible defenses that others had access to the computer and that virtual images were

involved, "do not apply to Case No. 2001-CF-1557, the case that I gave him the prison

sentence on."  Ex. D, p. 69.  Case number 2001-1557 had the original charges for two

printed images, and the court understood Petitioner's testimony to be that he admitted

printing them.  *Id.*  The court commented that those two photographs

> were the ones his girlfriend took to the police.  He has acknowledged that
> those were, you know, real photos in terms of his statement to the
> girlfriend that those were bad and if they were exposed, he would be in
> real trouble.

*Id.*, pp. 69-70.  The court therefore considered these potential defenses claims as

related to "the whole picture of it," as the prison sentence was affected by all the

charges.  *Id.*, p. 70.

The court found Petitioner's testimony less credible than the testimony of defense

counsel, Frank Sheffield.  *Id.*  The court found that Petitioner did not put Sheffield on

notice that there was any reason to investigate whether these were virtual images, and

thus it was not unreasonable for counsel to fail to investigate on his own without any

comment by Petitioner.  *Id.*  The court noted that Dr. Moorer reviewed the photographs

and gave his "expert opinion as stated in the factual basis" for the plea, and Petitioner

acknowledged these were the allegations.  *Id.*, p. 71.  The court noted that Ms. Fulford

(the prosecutor) had argued at sentencing that these were in fact photographs of

children "meeting the age requirements of the statute."  *Id.*  The court therefore found

Petitioner's assertion that they were virtual photographs was "entirely speculative and in

fact largely refuted by the record before me that that is in any way the case."  *Id.*

Petitioner has not shown that this was an unreasonable determination of the

facts in light of the evidence presented as to whether any of the photos were "virtual"

rather than images of real children, or rebutted the presumption of correctness by clear

and convincing evidence.  Counsel testified that he looked at all of the images and

could tell by his own eyes that they were real children.  Ex. D, pp. 34-36, 43.  He was

aware of decisions involving virtual or digital imagery but – based on his review of the

images, his conversations with Petitioner, and Petitioner's conversations with

psychologists – that was never an issue here and there was nothing to lead him to

explore this defense.  *Id.*, pp. 35-36, 42-47.  The court accepted this testimony as more

credible that Petitioner's testimony.

Taking as a fact that no indication was given to counsel to look into this defense,

the conclusion that counsel committed no error was not contrary to or an unreasonable

application of Strickland.  *See* 466 U.S. at 690-91, 104 S.Ct. at 2066 ("[i]n any

ineffectiveness case, a particular decision not to investigate must be directly assessed

for reasonableness in all the circumstances, applying a heavy measure of deference to

counsel's judgments.").

It is also noted that Petitioner has never demonstrated (here or in state court)

that the images *in fact* were virtual images rather than images of real children.[6]  *Cf.*

_____

[6] Even in Ashcroft v. Free Speech Coalition, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002) (holding that a statutory ban on virtual child pornography was overbroad in violation of the First Amendment), the Court rejected as "implausible" the Government's argument that virtual images were indistinguishable from real ones.  *Id.*, at 254, 122 S.Ct. at 1404.  "If virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes."  *Id.*  As noted in the concurrence, "the Government points to no case in which a defendant has been acquitted based on a 'computer generated images' defense."  *Id.*, at 259, 122 S.Ct. at 1406 (J. Thomas, concurring in the judgment).  In the event that technology evolved to the point where it would be impossible to prove images were real, then the Government might be able to regulate virtual child pornography with narrowly drawn restrictions.  *Id.* (J. Thomas, concurring).  Three justices dissented from the finding that the ban on virtual pornography was overbroad.  *Id.*, at 261, 263-266, 122 S.Ct. at 1407, 1408-1410 (J. O'Connor, joined by J. Rehnquist and J. Scalia, concurring in the judgment in part and dissenting in part); and *Id.*, at 267-273, 122 S.Ct. at 1411-14 (J. Rehnquist, joined in part by J. Scalia, dissenting) ("we should defer to [Congressional] findings that rapidly advancing technology will soon make it all but

Reece v. United States, 119 F.3d 1462, 1468-71 (11th Cir. 1997) (to show prejudice for

counsel's failure to argue that substance was the type to which lesser guidelines

applied, defendant would have to show that it was, in fact, that substance); Jones v.

United States, as: 224 F.3d 1251, 1260 (11th Cir. 2000) (following Reece).

### Promise or advice as to a 60 month sentence

Petitioner also asserts that counsel was ineffective in advising him that he would

receive a sentence of no more than 60 months, as he was actually sentenced to a total

term of 140 months (80 months imprisonment plus a probation term).  Doc. 1, pp. 4,

4(I), 4(II).  The state court rejected the assertion that attorney Sheffield promised

Petitioner a sentence of no more than 60 months, finding it was contradicted by

Sheffield's testimony as well as Petitioner's sworn testimony at the time of his plea.  Ex.

D, pp. 72-73.  "Frankly, I find that to be a recent fabrication of this defendant to try to get

out of the sentence."  *Id.*, p. 73.  The court rejected Petitioner's testimony that the

guidelines were not explained to him, finding it "directly contradicted by Mr. Sheffield's

testimony," and contradicted by the sentencing transcript.  *Id.*

> And for him to come in here today and say he had no idea about the
> guidelines, he had no idea about departures, and even more incredibly
> that somehow or other he thought there was some secret deal that he was
> going to get 60 months is totally belied by everything that was said during
> the course of the proceedings.  I don't accept his testimony on that, and I
> reject it.

*Id.  See also Id.*, at 74 (noting as significant that the plea form specifically said the

parties would argue sentence at a hearing).

_____

impossible" to enforce prohibitions of actual child pornography).

Petitioner has not shown that this was an unreasonable determination of the facts in light of the evidence presented, or rebutted the presumption of correctness by clear and convincing evidence.  The prosecutor said in argument that "this was a situation where I think there was indications [sic] that there was a plea offer at one time of 60 months.  But that was rejected in light of let's plea straight up and try to get something better."  Ex. D, p. 65.  Sheffield testified he did not tell Petitioner he was facing only 60 months.  "I told him that the State had agreed that they would ask for the bottom of the guidelines, and they would allow us to argue for less than the guidelines.  But the bottom of the guidelines was 80 months, it wasn't 60 months."  Ex. D, p. 38.  He said they discussed the guidelines and he explained to Petitioner they would have to convince the court to go below the guidelines, and they would take their "best shot."  *Id.*, p. 39.  This was the only "deal" he told Petitioner about, that the prosecutor would ask for the bottom of the guidelines and not oppose having a mitigation hearing, and he would argue for a sentence below the guidelines.  *Id.*, p. 41.  Taking as a fact that counsel did not misadvise Petitioner as to his potential sentence, the conclusion that counsel committed no error and that this did not affect Petitioner's decision to enter a plea or the sentencing proceeding was not contrary to or an unreasonable application of Strickland or Hill.

### Whether Petitioner knew about the photographs on his computer or whether someone else was responsible for them

Petitioner asserts that counsel was ineffective in denying him the opportunity to offer defenses or mitigating evidence at sentencing which could have lessened his sentence.  Doc. 1, pp. 4, 4(I) - 4(II).  Petitioner contends that counsel should have

pursued mitigating evidence that Petitioner did not believe he was responsible for images arriving on his computer, he was not aware of the quantity of material on the computer, "and that of the less than 40 images he was aware of, he had been interrupted while in the process of deleting them."  *Id.*, p. 4(II).

The trial court accepted Sheffield's testimony and rejected Petitioner's claim that there was a possible defense based on others having access to the images.  Ex. D, p. 71.  The court recalled at sentencing that Petitioner talked "about his dealings with photographs and pornography, and basically acknowledge[d] the offense."  *Id.*  Petitioner had said then he was not aware of the number of images, and the court thought that if others had access "that would have been the perfect opportunity in his comments to have disputed the numbers."  *Id.*, pp. 71-72.  Instead, Petitioner brought up the numbers at sentencing yet did not really dispute them, and the court found his Rule 3.850 testimony in this regard was not credible.  *Id.*

The state court also noted that Mr. Griffin (the person Petitioner identified as responsible for the images) had testified at sentencing,[7] and the court thought that if Griffin was someone who could have given defense testimony and was the true culprit, Petitioner would not have put him on as a character witness.  *Id.*  The court rejected Petitioner's claim that this was viable defense.  *Id.*

---

[7] Two Randall Griffins gave statements at sentencing.  The father testified that his son and Petitioner had been best friends for about 18 years and he thought Petitioner was a good person.  Ex. B, pp. 37-38.  The son said he had been friends with Petitioner for as long as he could remember, that Petitioner was a good person, and he and his children had spent time with Petitioner and he never knew him to do anything immoral or unethical.  *Id.*, pp. 39-40.

The court also noted a related assertion in the testimony, not really raised in his

motion but addressed anyway: "He says that he was told not to mention other persons

at sentencing.  Again, that related back to the not having had access to the photos."  Ex.

D, p. 74.  The court found the claim was "refuted by Mr. Sheffield.  And it is absolutely,

in the context of what Mr. Lovern said in the course of sentencing, *it is absolutely*

*ludicrous.*"  *Id.* (emphasis added).  Petitioner acknowledged his conduct so the court

would show leniency in sentencing, and "[t]o in the same breath have said, but it really

wasn't me, it was somebody else, in that context is ludicrous."  *Id.*

At sentencing, Petitioner told the court that when he was first introduced to

pornography by a friend, he did not condemn his friend and he (Petitioner) became

desensitized to it.  Ex. A, p. 54.  He said these were things he had looked at but they

were not his focus, and "I don't believe with all in my heart that it's a sexual interest of

my own."  *Id.*  He said that his experience in the case and following media coverage of

child abuse cases, "makes me look at this in a different way and not the passive way

that I had at one time."  *Id.*  He said he could not account for the number of photos, "I

didn't sit there and take count," but said "I have to believe that there were, you know,

many disturbing images of every type."  *Id.*  He said "[t]his is not something that I

participate in or have any self-interest and involvement.  It is stuff that I have looked at."

*Id.*

Petitioner told the court that, as he had told his psychiatrist, he did not "know who

to be remorseful to," and did not "do anything to anyone physically.  I feel like I've

victimized my family for having to go through this, but there is no victim for me to be

sorry to."  *Id.*, pp. 55-56.  He said:

> I would do anything to help make this an issue that I could do something about in the future and it scares me to death and I, in no way, wouldn't want to minimize what I have done here.  It angers me almost that I could be considered – that I could be considered a sexual offender alongside with those people who commit those kind of crimes.

*Id.*, p. 56.  He said "I want to do the right thing, whatever that is.  If I own [sic] a debt and my time behind bars then that's what I will do," but asked if the court could facilitate getting him on back to a productive life.  *Id.*, p. 57.

Given his long statement to the court at sentencing, Petitioner had a full opportunity to say that he thought someone else was responsible for some or all of the images, and that (of the ones he knew of) he was trying to delete them.[8]  Moreover, Petitioner also testified at the Rule 3.850 hearing that he wanted to tell the court at sentencing that he was diagnosed by his therapist as having an addiction to pornography, as a possible mitigating factor.  Ex. D, p. 16.  This is completely inconsistent with his testimony that he was not responsible for the images, and inconsistent with his statement at sentencing that the images were something he may have looked at but were not his "focus."  Petitioner has not shown that the trial court's determination as to this issue was an unreasonable determination of the facts in light of the evidence presented, or rebutted the presumption of correctness by clear and convincing evidence.

---

[8] Presumably the allegation that he was interrupted from deleting the images is tied to the asserted defense that someone else was responsible.  It would not be a defense that he was prevented from deleting illegally possessed child pornography that he himself had saved or downloaded, any more than it would be a defense to possession of illegal drugs that a defendant was interrupted from flushing them down the toilet.

**Whether one of the images in case number 2001-1557 was child pornography**

Petitioner next makes the argument, both as a substantive claim and in the context of ineffective assistance of counsel, that one of the two images in case number 2001-1557 was not child pornography but only of child nudity.  This "simple nudity" claim, whether standing alone or in the context of counsel's performance, is the most problematic of the claims presented.  Respondent relies on a ruling that was never made by the state court, and assumes exhaustion which is, at best, unclear on this record.  A lengthy discussion, therefore, including the arguments made here and in state court, must follow.

Petitioner asserts error by the state court, in allowing the prosecution to charge him with one count under FLA. STAT. § 827.071(5) for item 22 on the property receipt,[9] as the nude photograph does not meet the statutory definition of "sexual conduct" set forth in FLA. STAT. § 827.071(1)(g).  Doc. 1, pp. 4, 4(XII) - 4(XIII).  He contends that "Petitioner's photograph was simply a nude photograph and not used in any way toward any type of sexual gratification on the Petitioner's part," and child nudity is not necessarily child pornography.  *Id.*, p. 4(XIII).  Petitioner contends that while Dr. Moorer

---

[9] Attached to the petition is a probable cause affidavit, referencing item 22 on the property receipt as "[a] picture of a naked female child," one of the two photos (of three identified there) concluded to be child pornography.  Doc. 1, Ex. A, p. 2.  The other concluded to be child pornography was "of two boys having sexual intercourse," one less than 12 years old and the other approximately eleven to twelve years old (item 23 on the property receipt).  These were the two images charged in 2001-1557.

was qualified to determine the apparent age of the subject, he was not qualified to give

an opinion that the photograph was child pornography.  *Id.*, p. 4(XIII)(b).[10]

Respondent responds that Petitioner raises a state law issue – whether the

evidence met the statutory definition – as to which state court remedies were not

exhausted.  Doc. 15, p. 16.  Respondent asserts that Petitioner *did* exhaust an

ineffectiveness of counsel claim for failing to challenge whether this one photograph met

the definition of "sexual conduct" under the statute, and addresses this claim as the

ineffectiveness claim.  Doc 15, pp. 16, 18.

> Responding to the claim as so construed, Respondent argues:
> Following the evidentiary hearing, the circuit court found that two experts
> had examined the photographs and found them to be, in fact, child
> pornography, and that *therefore, the trial counsel was not ineffective for
> failing to contest that the virtual photographs met the definition of the
> statute.*  (Doc. 10, Ex. D, pp. 70-71).

> The trial court correctly found no deficient performance and then went on
> to hold that he had not shown that he had been prejudiced.

*Id.*, p. 18 (emphasis added).

The argument, particularly the italicized language, seems to confuse the potential

defenses of simple nudity and virtual pornography.  As discussed ahead, it does not

appear that the trial court ever ruled on counsel's failure to raise a simple nudity

defense, and it is not clear that that the claim was properly exhausted.

Petitioner agrees with Respondent that his argument is raised as a basis for his

ineffective assistance of counsel claim.  Doc. 21, p. 2.  But he also brings it as a

---

[10] Petitioner also raises as related "sub-issue two" that the trial court ruled
improperly in the Fla.R.Crim.P. 3.850 proceedings.  *Id.*  An alleged defect in a collateral
proceeding is unrelated to the cause of Petitioner's detention, and does not state a
claim for habeas corpus relief.  Quince v. Crosby, 360 F.3d 1259, 1261-62 (11th Cir.
2004) (citations omitted).

separate substantive claim, asserting cause and prejudice for his default in failing to set forth additional facts sooner. *Id.* "In addition to ineffective assistance of counsel, Petitioner's 1st [Amendment] right to freedom of expression and 6th [Amendment] right to due process were violated." *Id.*, p. 5. He points out that Dr. Moorer's affidavit is not in this record, and that even if an expert had said that an image was child pornography, that opinion could not sustain a conviction under the statute if the photograph did not depict sexual conduct. *Id.*, p. 6. Petitioner alleges that the image was described on both the property receipt (not in this file) and the probable cause affidavit as a naked female child. *Id.* Petitioner claims that there was no mention of any sexual conduct or lewd display on this property receipt, and argues that "[t]his image is innocuous and void of obscenity." *Id.*

Petitioner argues that Dr. Moorer made no determination as to the conduct in the images, but the prosecutor misrepresented that Dr. Moorer determined that all photographs included sex acts. *Id.*[11] He contends that the state court could not rely on conflicting testimony alone to determine whether the image included sexual conduct, and the image should be brought before this court for review. *Id.*, pp. 6-7.

Petitioner claims that he is indigent and had the benefit of counsel only for the hearing on the Rule 3.850 motion. *Id.*, p. 7. He asserts that his Rule 3.850 counsel relied on the pro se motion and the limited portion of the record provided, and "the false factual basis [by the prosecution] led counsel to believe that Petitioner's allegation was refuted by the record. . . . This inhibited the petitioner from fully developing the fact

---

[11] As noted *supra*, as a factual basis for the plea the prosecutor said that, according to Moorer, an expert used in child pornography cases, the two photographs depicted sex acts being performed on children under the age of 12. Ex. A, pp. 7-8.

finding to show counsel's ineffectiveness and the prejudice thereof."  *Id.*, p. 7.  Petitioner

claims that the prosecution "misrepresented the findings of its star witness and

suppressed the fact that not all images included sexual conduct," and he that did not

discover this until he prepared the § 2254 petition.  *Id.*, p. 7.  Petitioner asserts that his

"right to due process has been violated by the false factual basis and sealed portions of

the evidence (the images)."  *Id.*, pp. 7-8.

        It must be reiterated here that this claim challenges only one photograph out of

the many photographs in the two cases.  *See* doc. 21, p. 2 (noting the same evidence –

item 22 – is at issue in both the ineffectiveness and underlying substantive claims).  The

image or photo was of a naked female child, estimated to be less than twelve years old,

in case number 2001-1557.  Doc. 1, Ex. A, p. 2; Ex. A, pp. 7-8 (referring to the

photographs in the first case as containing sex acts performed on children); Ex. B, p. 60

(describing a "picture of a young girl under the age of twelve, a nude girl.").  The other

image in that case was of two boys, no older than twelve, having anal intercourse.  Doc.

1, Ex. A, p. 2; Ex. B, p. 60.  There is no argument that there was a "simple nudity"

defense to this other image of the two boys.

        Florida Statutes Section 827.071(5) provides that "[i]t is unlawful for any person

to knowingly possess a photograph . . . which, in whole or in part, he or she knows to

include any sexual conduct by a child."  The statute defines "sexual conduct" as

including, *inter alia*, "actual lewd exhibition of the genitals."  FLA. STAT. § 827.071(1)(g).

A photograph of a "naked" child would have to have involved "actual lewd exhibition of

the genitals" if the photograph did not involve some more graphic sexual conduct with

another person.

Petitioner asserted in his Rule 3.850 motion, in the context of purported defenses counsel failed to pursue, that "some of the images may have contained single nude or semi-nude child subjects, *whether virtual or actual*," so he "would challenge whether or not statutorily defined sex acts were being performed."  Ex. C, p. 7 (emphasis added). Petitioner did not identify a particular image in his motion, but asserted that nudity alone was not sexual conduct and cited State v. Pasko, 815 So.2d 680, 681 (Fla. 2d DCA 2002) and Schmitt v. State, 590 So.2d 404, 409 (Fla. 1991), *cert. denied*, 503 U.S. 964 (1992).  *Id.*  Those cases recognized that child nudity alone does not constitute "sexual conduct" under the statute, but in neither case did the defense prevail. In Pasko, the information charged 77 counts of possession of child pornography, based on 77 photographs of nude female children.  While recognizing that "nudity alone does not constitute sexual conduct," on review of the photos and the inferences drawn from them, the court found a prima facie case under FLA. STAT. § 827.071(1)(g) to survive a motion to dismiss the information.  815 So.2d at 681.

In Schmitt, the probable cause affidavit alleged that defendant had taken numerous nude photos of his twelve year old daughter, beginning when she was eight years old, and had an adult female pose for nude photos in the presence of his daughter.  590 So.2d at 408.  He more recently obtained a video camera and taped his daughter and a her friend disrobing, and taped his daughter swimming in the nude.  *Id.* He kept the photographs, films, cameras, video player and television on the premises to be searched.  *Id.*  He entered a plea of no contest reserving the right to appeal, where he claimed (*inter alia*) a lack of probable cause for a violation of § 827.071(5), as the

affidavit alleged simple nudity.  *Id.*, at 408-409.  The claim was rejected, and the court reasoned:

> While it is conceivable that one might view the allegations in the present affidavit as depicting simple nudity, we believe the magistrate had a substantial basis for concluding otherwise.  The affidavit's factual allegations indicated that Schmitt did not treat the nudity of himself, his daughter, and others in the offhand, natural manner that might be expected if the conduct were purely innocent – for example, if they were nudists.  Rather, the affidavit shows he made nudity a central and almost obsessive object of his attention. . . .  While nudity alone would not have sufficed, this overall focus of Schmitt's conduct tended to show a lewd intent[12] and thus created a substantial basis for believing that the search would fairly probably yield evidence of a violation of section 827.071.

*Id.*, at 411.

At the Rule 3.850 hearing, counsel noted that the Rule 3.850 motion was filed pro se, and explained to Petitioner: "I'm going to be going through that motion with you and asking you questions about it."  Ex. D, p. 5.  He asked, "[i]f there is anything that I don't bring up regarding that [pro se 3.850] motion that you would like me to bring up, would you stop and tell me during this testimony?"  *Id.*  Petitioner responded "[y]es, sir."  *Id.*

Petitioner testified that when the additional counts were added (to the original two), he expressed concern to counsel that "the State was using misdemeanor counts of bestiality in addition to things that were found on a disk that were not found in my possession as part of that count, 188 counts."  *Id.*, pp. 6-7.  Petitioner said they received only minimal discovery, and it was "obvious to me by one of the few things that we did

---

[12] As noted by the court, the statute "prohibits several discrete kinds of conduct," but on its face only the "lewd exhibition of the genitals" contains a lewdness element. *Id.*, at 409, n. 3.  *See also Id.*, at 410-411 and nn. 8 and 9, discussing the synonymous terms "lewd" and "lascivious."

receive that the State was using material such as in an argument of nudity versus child pornography that is absolutely protected under the First Amendment."  Ex. D, p. 7.[13] Petitioner said he asked trial counsel to arrange for him to view the images but counsel told him that would "just piss off" the judge and prosecutor.  *Id.*, p. 8.

Petitioner testified that the only images he saw and reviewed with trial counsel after discovery were "[t]he two that were in the one case and less than a dozen on the other case."  *Id.*[14]  He described these, including both of the two photos in case number 2001-1557, as the "worst possibly imaginable."  *Id.*  This would include the photo of the girl Petitioner now claims was merely a nude photo.  He also said that "as for one of the two that I was actually convicted of, that was definitely my thoughts on the matter is that it could not be proven *other than virtual child pornography.*"  *Id.*, p. 9 (emphasis added). It is unclear whether Petitioner meant the photo of the girl or the photo of the twelve year old boys having intercourse as being a virtual image.

Petitioner testified that at sentencing, he asked trial counsel under his breath if he (Petitioner) could address the court, but counsel "vehemently opposed that."  *Id.*, p. 15.  He said he wanted to tell the court he thought he "could do no worse than 60 months," and wanted to tell the court that his therapist diagnosed him with an addiction to pornography.  *Id.*, p. 16.  Petitioner then interjected:  "And of course the additional – right there we had the little bit of discovery, the nudity versus child pornography issue,

---

[13] This is the testimony, at page 7, lines 18-23, which was referenced by Petitioner in his Rule 3.850 appellate brief (quoted *infra*).

[14] When his Rule 3.850 counsel first asked if he had seen the images that were charged in the two cases, Petitioner said "I have seen material on-line, and I have – " at which point counsel clarified, "I mean after the discovery, Mr. Lovern, after the discovery."  *Id.*, p. 8.

one of the two images that I was convicted of I believed –" at which point counsel interrupted and said, "[w]ell, you pled to.  I mean you were convicted of them, but you did not contest any of these charges?"  *Id.*, at 16.  Petitioner responded, "[c]orrect.  Being convicted of it, or I realized it was definitely not statutorily-defined child pornography.  I wanted to point that out."  *Id.*

Petitioner said that if he had known about all the possible defenses or that he would get 80 rather than 60 months he still would have entered a plea, but "would have preferred to have been able to plead not guilty to some of the charges . . . and taken them to trial."  *Id.*,  p. 17.  On cross examination, Petitioner could not say how many charges he would have entered a plea to if properly advised by counsel; "I would have had to have been given full discovery to make that assumption."  *Id.*, p. 17.  He said he would have "pled open" to some of the charges (like he did at his plea, leaving the sentence to the court's discretion), but not all of them.  *Id.*

Petitioner testified that despite his plea, he thought he would be able to present mitigating evidence at sentencing.  *Id.*, p. 23.  He said, "I am wholly responsible for printing the two images with which I was convicted; however, I did not believe that they were child pornography."  *Id.*, p. 23.  He agreed, however, that he entered a plea that he would not contest whether the images were child pornography.  *Id.*

Petitioner admitted that he had not, since the time of his plea and sentencing, hired an expert.  *Id.*, p. 24.  "I wasn't given full discovery.  It wouldn't do much good to hire an expert."  *Id.*  Petitioner said he would have tried to withdraw his plea at the end of sentencing, but his attorney would not let him address the court.  *Id.*, p. 28.  No

additional questions regarding discovery or hiring an expert were asked of Petitioner on redirect.  *Id.*, p. 30.

Attorney Sheffield testified that "[t]here were some 330-plus images that the police department had printed up or had on the disk of their computers."  Ex. D, p. 35. He said he "went down to the police department and personally viewed each and every one of those photographs on those computer disks."  *Id.*  Sheffield said that in the course of a psychological evaluation done by a group in Atlanta, Petitioner "admitted that he had been dealing with various types of pornography for years, since he was 14 years of age."  *Id.*  He said that the evaluation from Atlanta indicated Petitioner had "a significant sexual attraction to eight to ten-year-old females, and he did admit to looking at child pornography on a regular, fairly regular basis."  *Id.*, p. 52.

Sheffield said that the photographs, shown by the prosecutor on a slide projector during sentencing, "were so graphic" that he asked to turn the screen so the audience would not have to see them.  *Id.*, p. 36.  Sheffield advised Petitioner that if they went to trial and the images were seen, "it would certainly have the tendency to inflame anyone that had seen them."  *Id.*, at 40.  Petitioner's Rule 3.850 counsel on cross examination did not ask Sheffield any questions relevant to a simple nudity defense.  *Id.*, at 42-54.

In the closing Rule 3.850 arguments, counsel for Petitioner "add[ed] for the record:"

> [E]ven a depiction of nudity involving minors are [sic] protected expression without showing the depictions are in some significant way erotic.
>
> My client has indicated he never even saw the majority of these images. And Mr. Sheffield did not have any testimony that rebutted that he showed my client that.  Mr. Sheffield just indicated what he saw.  *There was no evidence brought forward as to what they were or what they were not.*

> And that standard I just stated is in [<u>Rhoden v. Morgan</u>, 863 F.Supp. 612
> (M.D. Tenn. 1994)].

*Id.*, pp. 60-61 (emphasis added).

In its findings, the court noted as to the two original charges, Petitioner "has

acknowledged that those were, you know, real photos in terms of his statement to the

girlfriend that those were bad and if they were exposed, he would be in real trouble.  So

there is no testimony before the court, at least in terms of the defenses, that would in

any way affect the plea in that case . . . ."  *Id.*, pp. 69-70.  The court did not expressly

address the argument that one image in case number 2001-1557, or any other image,

was of simple nudity rather than pornography, though the observation that Petitioner

knew the photo was "bad" and would cause him to be in "real trouble" arguably is

relevant to that claim.

On appeal from denial of Rule 3.850 relief, Petitioner asserted that he "testified

that he mentioned the defense of nudity versus child pornography.  (T-7, L-18-23)."  Ex

E, p. 2.  He asserted, "evidence presented at the evidentiary hearing establishes that

counsel was aware of, but failed to investigate, the defense of nudity vs. pornography,

as well as, the defense of virtual as opposed to actual pornography."  *Id.*, p. 5.

> Specifically as to count 2 of case number 2001-CF-1557 which is based
> on the photograph of a nude child, counsel made no indication that he
> considered that this photo did not meet the statutory definition of obscenity
> such as to support a conviction.  Here, again, counsel has denied the
> Appellant of a defense which he would have utilized rather than entering a
> plea to this specific count and perhaps others like it.

*Id.*, p. 8.  He argued that Dr. Moorer was not an expert in virtual images or statutory law,

and his opinion that count two in that case "qualified as child pornography when, in fact,

it does not meet the statutory definition as such, brings into question his reliability as to

asserting that other images qualified as child pornography."  *Id.*, pp. 8-9.  If counsel had

properly investigated, it was argued, Petitioner would have presented a defense

specifically as to count two "that nudity alone is not prescribed by law."  *Id.*, p. 12.

The State responded that Petitioner "did not present to the trial court his claim

that counsel failed to investigate a defense of nudity verse [sic] obscenity, which he

raises for the first time on appeal."  Ex. F, pp. 13-14 and n. 1 (noting that the record

established no reason to investigate such a defense; "there is no indication in the record

that the photographs were merely nude pictures of children.").  It was argued that the

circuit court could not be faulted for denying a motion based on facts or arguments

never presented to it, and the issue should not be addressed.  *Id.*, p. 14.

Preservation of this argument was the sole issue addressed in Petitioner's reply

brief.  Ex. G, p. 1.  He responded that it was clearly raised in the Rule 3.850 motion,

even if the argument was brief or not artfully drafted.  *Id.*, pp. 1-2.  He claimed "[i]t was

these images that the Appellant wished to challenge, at trial, and specifically as to case

number 1557, had he been informed of, and counsel developed, the defense of nudity

verses [sic] obscenity."  *Id.*, pp. 2-3.  He argued that it was counsel's failure to develop

this defense, "resulting in the Appellant entering a plea which he otherwise would not

have entered, and depriving him of a trial of which the Appellant would have otherwise

availed himself . . . at least with regard to case number 1557 . . . ."  *Id.*, p. 3.  The denial

of Rule 3.850 relief was affirmed without opinion.  Ex. H.

The underlying substantive claim – whether a single image in case number 2001-

1557 was child pornography or something else – was not properly exhausted by raising

it through an ineffective assistance of counsel claim in the Rule 3.850 motion, and that

claim is now procedurally barred in state court.  *See* LeCroy v. Secretary, Florida Dept. of Corrections, 421 F.3d 1237, 1260 and n. 24 (11th Cir. 2005), *cert. denied*, 126 S.Ct. 1458 (2006) (substantive claim based on a "lock-up statement" by the trial court was procedurally barred; the claim was "separate and distinct from an ineffective-assistance-of-counsel claim based on the failure to object to, or appeal, the trial court's lock-up statement," which was exhausted) (citations omitted).

Petitioner concedes that the facts supporting the substantive claim raised here are "more extensive than" than the facts offered in state court, but "there was significant, sufficient cause and prejudice that forestalled the development of fact finding during state proceedings."  Doc. 21, p. 2.  He claims that the false factual basis given by the prosecution at the plea has prejudiced him throughout the postconviction process. *Id.*, p. 7.  "Evidentiary counsel relied on the 3.850 motion and the limited portion of the record provided to the court and Petitioner by the state to prepare for the hearing," and "the false factual basis led counsel to believe that Petitioner's allegation was refuted by the record."  *Id.*  Petitioner claims that '[t]he false factual basis made it seem that [his] allegation was not true and that the nudity defense was not viable in this case," and "[t]his inhibited [him] from fully developing the fact finding to show counsel's [ineffectiveness] and the prejudice thereof."  *Id.*

Petitioner asserts:

The state misrepresented the findings of its star witness [Dr. Moorer] and suppressed the fact that not all images included sexual conduct necessary to sustain a conviction.  It was not until preparing for the § 2254 petition that the discrepancy in the record was discovered that contradicts the factual basis.  Thus far, the Petitioner's 6th [Amendment] right to due process has been violated by the false factual basis and sealed portions of the evidence (the images).  The state's factual basis is not fully supported

by the record.  For these reasons, any negligence of presenting this evidence to the lower court, or on appeal, by the Petitioner should be excusable.

*Id.*, pp. 7-8 (citations[15] omitted).

As discussed ahead, Petitioner was not diligent even in developing the facts to support his ineffectiveness of counsel claim based upon the assertion that one photo was only of a nude child, and cannot show cause for procedural default for the substantive claim.  The court will assume that the simple nudity ineffectiveness claim was properly exhausted to the extent it was argued in state court.  Petitioner raised it to the trial court, but that court failed to address it explicitly and denied other claims on the merits.  Petitioner raised the claim on appeal, the State argued it was not preserved at all,[16] Petitioner replied only as to that point, and affirmance was without opinion.  *Compare,* Coleman v. Thompson, 501 U.S. 722, 739-740, 111 S.Ct. 2546, 2559-60, 115 L.Ed.2d 640 (1991) (where state court granted motion to dismiss based solely on a procedural ground, there was no presumption that the decision of the state court rested primarily on federal law or was interwoven with federal law).  Given the history, this

---

[15] Petitioner actually references paragraph numbers of an appendix, and the paragraphs contain citations to a habeas corpus practice manual and cases.

[16] The State argued that Petitioner was presenting, for the first time on appeal, an ineffectiveness claim based on counsel's failure to investigate a defense of nudity versus obscenity.  Ex. F, pp. 13-14.  That was not an accurate statement of the record. The claim may well have been barred anyway, assuming (as this court has) that the image was not a part of the record.  "[A]ppellate courts do not create records, nor do statements of counsel serve to create a record."  Hill v. State, 471 So. 2d 567, 568 (Fla. 1st DCA 1985).  In Hill, the documents which were not admitted into the trial record could not be included with record on appeal even if they might have been subject to judicial notice in the trial court, as "the place for securing such notice is in the trial court."  *Id.* (citation omitted).

court "has good reason to question whether there is an independent and adequate state ground for the decision."  *Id.*, at 739, 111 S.Ct. at 2559.

But whether or not the simple nudity ineffectiveness claim *as presented in state court* is properly exhausted or procedurally barred,[17] the record does not support the request for relief.  The record lacks a copy of the image, a detailed description of the image, or any testimony about the content of the image.  Petitioner's claim that the image was only of nudity and innocuous appears to be based entirely on references to a naked female – made without any further elaboration – in the property receipt and probable cause affidavit.  Petitioner's claim that the prosecutor provided a false basis for the plea is based on her summary (in the plea transcript) of Dr. Moorer's opinion, that all of the images were of sex acts being performed on children under the age of twelve.

It is not entirely clear that the physical evidence was *ever* in the trial court's file, given the sensitive nature of the evidence, the no contest plea, and the fact that the prosecution showed selected images to the court at sentencing.  If the printed images in case number 2001-1557 *were* in the file at the time of the plea or sentencing, they presumably would not have remained in the file after the case was closed.[18]  There is no

_____

[17] As already discussed the state argued procedural default in the Rule 3.850 appeal, but Respondent does not argue here that the claim was defaulted.  This court may have the discretion to do so, but is not obliged to raise the procedural default issue sua sponte.  Day v. McDonough, __ S.Ct. __, 2006 WL 1071410 and n. 5 (April 25, 2006) (citing Trest v. Cain, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997), and collecting cases from the circuit courts).

[18] This court reviews 28 U.S.C. § 2255 motions, similar to Rule 3.850 motions, which are filed as a post conviction motion in the criminal file.  Sensitive exhibits, including pornography, are maintained by a law enforcement agency or party.  Local Rule 5.2(A)(1).  Other exhibits must be retrieved by parties within three months after the case is decided or, if appealed, within three months of the mandate.  Local Rule 5.2(B). The clerk may destroy or otherwise dispose of exhibits which are not retrieved in this

indication that Petitioner or his Rule 3.850 counsel expressly asked – whether before or during the hearing – that a particular image be produced for the court's review of the Rule 3.850 claim.[19]

For this court to grant relief based on the merits of this ineffective assistance of counsel claim, review of evidence which was not presented to the state court would be necessary.[20]   In amending the relevant statutes in 1996,[21] "Congress modified the discretion afforded to the district court and erected additional barriers limiting a habeas petitioner's right to discovery or an evidentiary hearing." Isaacs v. Head, 300 F.3d 1232, 1248-49 (11th Cir. 2002), *cert. denied,* 538 U.S. 988 (2003) (discussing § 2254(e)(2) and § 2254 Rule 6(a)); Crawford v. Head, 311 F.3d 1288, 1328-29 (11th Cir. 2002); *cert. denied,* 540 U.S. 956 (2003) (*quoting* Isaacs, also citing § 2254(e)(2)).

Section 2254(e)(2) provides that where a petitioner "has *failed to develop* the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant" makes one of two showings. §

---

time.  Local Rule 5.2(C).

[19] This court can find no reference to such a request in the record.  The trial court's failure to mention the issue in denying the Rule 3.850 motion supports the assumption that Petitioner did not seek review of the actual image in the 3.850 proceedings.

[20] In the unlikely event that the physical exhibits remained in the criminal file through the 3.850 hearing, this image was one of 188 images.  If this court looked at the image and found it facially was of "sexual conduct" as defined by the statute then relief would be denied.  But if the court found (as Petitioner contends) the image was "innocuous and void of obscenity" on its face, then counsel's testimony would be necessary to determine whether he knew of this as a possible defense, and what reasons (if any) he had for not raising the defense.

[21] The AEDPA, effective April 24, 1996, made substantial amendments to § 2254 and related statutes.

2254(e)(2) (emphasis added).  The petitioner must show either that the claim relies on

"a new rule of constitutional law, made retroactive to cases on collateral review by the

Supreme Court, that was previously unavailable," *or* show both that the factual

predicate for the claim "could not have been previously discovered through the exercise

of due diligence," and that "the facts underlying the claim would be sufficient to establish

by clear and convincing evidence that but for constitutional error, no reasonable fact-

finder would have found the applicant guilty of the underlying offense."  § 2254(e)(2)(A)

and (B).

In Crawford, the state court's denial of a motion to allow DNA testing on items

listed in a report, where the state habeas case had been pending almost two years and

the motion was filed a day before the evidentiary hearing, was "unassailable."  311 F.3d

at 1328.  The district court therefore properly denied testing of the items in the § 2254

proceeding.  The petitioner had "failed to develop" the facts, so "in light of both §

2254(e)(2) and Rule 6(a)," he was not entitled to have the testing done in the § 2254

proceeding.  *Id.*, at 1329.  As the requests for testing were properly denied, the court

"cannot consider conjecture about what testing might have shown" in considering the

constitutional claim.  *Id.*

Petitioner Lovern complained to the trial court that he had not received full

discovery at the time of his plea and sentencing.  He was not entitled to obtain in

discovery *copies* of images charged to be child pornography, but trial counsel said he

personally looked at "each and every one" of some 330 images at the police

department.  *Cf.* State v. Ross, 792 So. 2d 699, 701-702 (Fla. 5th DCA 2001) (rejecting

argument that defendant was entitled to copies of child pornography images to prepare

defense to charges, the images were contraband and could not lawfully be possessed by defendant or disseminated by the FDLE), *citing* United States v. Kimbrough, 69 F.3d 723, 730 (5th Cir. 1995), *cert. denied,* 517 U.S. 1157 (1996).[22]

More important, Petitioner testified at the Rule 3.850 hearing that after discovery, he had seen both photographs that were the basis of case number 2001-1557, and both were the "worst possibly imaginable."  Ex. D, p. 8.  Further, since he had seen both photographs in discovery, he did not need further discovery to contend that one of the photographs depicted simple nudity.  Therefore, this argument is not premised upon a factual basis which could not have been previously discovered with due diligence. There is no indication in the record that in the course of the Rule 3.850 proceedings that Petitioner sought permission for an expert or his own counsel to inspect the image, or asked the court inspect the image *in camera*, to see if simple nudity was a viable defense.

No other evidence was developed as to this claim.   During the Rule 3.850 hearing, neither Petitioner nor Sheffield testified to the subject matter of this particular image.  Petitioner and Sheffield had both seen this image and had personal knowledge of what it looked like, but described in testimony for the record.  Sheffield was not asked any questions about this as a potential defense.

---

[22] In Ross, the defendant was charged with thirty counts of possession of child pornography under § 827.071(5), and all the images were on computer files.  792 So.2d at 700.  Defendant, his counsel, and any experts were permitted to review the images while the Florida Department of Law Enforcement (FDLE) retained control, but the defendant argued that possession was necessary to prepare for trial.  *Id.*, at 700-701. The court in Kimbrough said "[c]hild pornography is illegal contraband," and "[w]e decline to find that [FED. R. CRIM. P.] 16 provides such contraband can be distributed to, or copied by, the defense."  69 F.3d at 731.

In <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005), the state court had denied petitioner's motions for experts, and an evidentiary hearing was held on his § 2254 petition.  416 F.3d at 1298.  The Eleventh Circuit found that the district court had failed to note the belatedness of these motions, petitioner's failure to pursue other means (such as testimony of himself or family members ) to establish a factual predicate for his claim in state court, and his failure to appeal the denial of the motions for experts. *Id.*, at 1299.  The court held, therefore, that the district court erred in granting a hearing under § 2254(e)(2).  *Id.*, at 1300 (footnote omitted).

Here, there was not even a belated request which was denied, and Petitioner failed to develop the facts through testimony at the Rule 3.850 hearing.  He is not entitled to discovery or an evidentiary hearing to develop the facts in this court, and his requests to do so should be denied.  Doc. 19; Doc. 21, pp. 6-7.[23]

Lacking additional support, Petitioner's claim must fail.  The fact that the image was described as a naked female less than twelve years of age is not necessarily inconsistent with the prosecutor's claim that it was one of two images containing "sex acts" on children under age twelve.  In context, "sex acts" was shorthand for sexual conduct, which (as defined by the statute) includes lewd display of the genitals.  While the second page of the probable cause affidavit refers only to three printed images, one of a naked female child, the first page states that the images on the computer disks

---

[23] Petitioner's motion for this court to view the image, doc. 19, was denied.  Doc. 20.  It was denied as unnecessary because Respondent addressed the claim.  Doc. 20, referencing pp. 13-19 of the answer.  This was erroneous because a more careful review of the response (as discussed previously) shows that it confused or intermingled this with the virtual image issue.  Doc. 15, p. 18.  As concluded here, however, the request should have been denied for the reasons discussed above.

were described as young children engaging in sexual acts or posing nude, and "[t]he nude children were posed in sexual seductive poses."  Doc. 1, Ex. A, p. 1.  The prosecutor described the 186 images as including "children both posing in a lewd manner and also images that depicted actual and simulated intercourse between adults and children."  Ex. A, p. 8.

At sentencing, the prosecutor showed the court "nine or ten of the photos from the second case [case number 2001-2841] that are pretty typically [sic] of what you would find" of the images.  Ex. B, p. 61.  They included, *inter alia*, a female under age eight having intercourse with an adult male, a male under age twelve engaging in anal intercourse with an adult male, and a female under age twelve displayed in a lewd manner, with an  adult male pressing his genital area against her.  *Id.*, pp. 61-62.  The prosecutor said this was a typical selection of the images on the disk, "[a]lthough there are some images that are just lewd displays of the genital area . . . ."  *Id.*, p. 62.

To refer to some images of child pornography as *just* lewd displays reflects their comparison to more graphic images.  In view of 188 total counts, including images of children in sexual situations with other children or adults, as well as "some" that were "just lewd displays," the reference to one as a naked or nude child without reference to lewdness does not necessarily imply a non-criminal image of simple nudity.  Indeed, had this been an innocent image of child nudity,[24] the image would have been obviously distinguishable when compared with the other photos.  It is unlikely that counsel for the

---

[24] The Florida in Schmitt noted the factual allegations showed that the accused did not treat the nudity of his daughter or others in and "offhand, natural manner that might be expected if the conduct were purely innocent – for example, if they were nudists."  590 So.2d at 411.

defense would have missed it, or that the image would have been the basis of prosecution, given the numerous images which were *not* charged as separate counts.[25]

Petitioner has not demonstrated error or resulting prejudice for counsel's failure to raise a defense of simple nudity.

Accordingly, it is **RECOMMENDED** that petition for writ of habeas corpus filed by Richard A. Lovern pursuant to 28 U.S.C. § 2254 challenging his conviction and sentence in case numbers 2001-1557 and 2001-2841 in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on May 18, 2006.

<u>s/    William C. Sherrill, Jr.</u>
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

---

[25] There were three images in the probable cause affidavit, but only two counts in case number 2001-1557.  The third and uncharged image was of an Asian female, estimated by Dr. Moorer to be between 16 and 18 years old, having intercourse with a male.  Doc. 1, Ex. A, p. 2.  In case number 2001-2841, law enforcement took 283 images which appeared to contain child pornography to Dr. Moorer, who confirmed that at least 186 of them were children under the age of 17, with most under the age of 12.  Ex. A, p. 8